UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS M. JAMES, <br><br> PLAINTIFF <br><br> v. <br><br> DOCTOR ELI LORENZO; MR. LEFLORE; AND DOCTOR NICOLAS P. VILLANUSTRE, M.D., <br><br> DEFENDANTS. | CAUSE NO. 1:09-CV-1204-WTL-TAB |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Dan Leflore, by counsel, hereby submits his memorandum in support of Motion for Summary Judgment.

### I. SUMMARY OF ARGUMENT

Plaintiff Thomas M. James was incarcerated at the New Castle Correctional Facility ("New Castle") when he alleges that Dan Leflore violated James's civil rights by not moving him to a first floor bunk, which James says led to his "accident" of tripping and falling on stairs. Such a claim does not constitute an actionable § 1983 action because James failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") at New Castle, and Leflore was not deliberately indifferent to any substantial risk of serious harm to James. Accordingly, judgment in Leflore's favor is warranted.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff Thomas M. James was and Arizona inmate incarcerated at New Castle on November 27, 2007, when he alleges he "suffered a serious accidental injury to left side of skull and jaw area, by falling down." (Amended Compl. at Claim II, p. 4.) Despite calling the injury an accident, James appears to attribute his fall to Dan Leflore, who James alleges "failed to perform a duty . . . to move plaintiff to lower-level-lower bunk . . . ." (*Id.* at Claim II, p. 4-F.) James alleges Leflore was "deliberately indifferent" in his alleged failure to move James. (*Id.* at Claim II, p. 4-G.)

In fact, Leflore never had an opportunity or obligation to move James to a lower-level, lower bunk. Although Leflore was a Unit Team Manager at New Castle in November 2007, James was not one of the inmates for whom Leflore was responsible. (Aff. of Dan Leflore, attached as Ex. A, ¶¶ 7 and 9.) James was housed in Unit K-3 (*see* Feb. 18, 2008, grievance attached as Ex. B-4), which was a unit for which Unit Team Manager Dallis Sloss was responsible. (*Id.* ¶ 8.) Leflore was Unit Team Manager for Unit I and half of Unit J. (*Id.* ¶ 7.) Therefore, Leflore did not know about the bunk-relocation recommendation that James alleges was made. (*Id.* ¶ 5.) Further, while Sloss could have moved James to a lower-level, lower-bunk *if one was open and available*, such medical recommendations did not bind Unit Team Managers to do so. (*Id.* ¶ 6.)

James may have learned these facts had he filed a grievance about his bunk request at New Castle. New Castle had a special grievance procedure in place for Arizona inmates, which allowed them to exhaust their administrative remedies.

(Aff. of Barry Holder, attached as Ex. B, ¶ 8.)  First the inmate needed to submit the standard Arizona grievance form to Barry Holder, specifically stating the prison condition that was a problem.  (*Id.*)  Holder would then answer each grievance and, if the inmate was not satisfied with Holder's response, the inmate would appeal his grievance to Erica Wagner, the Arizona contract monitor.  (*Id.*)  This procedure was known to inmates, as is evidenced by James's mention of it in Paragraph 3 of his "Declaration" filed February 21, 2012 [DN 82].  (*Id.* ¶ 9.)

James filed grievances regarding (a) medical treatment for his toe (Oct. 25, 2007, grievance at Ex. B-2), (b) mail that he alleged was improperly opened (Nov. 28, 2007, grievance at Ex. B-3), (c) his access to the library to work on other legal matters (Jan. 10, 2008, grievance at Ex. B-4), and (d) medical treatment for his jaw (Feb. 18, 2008, grievance at Ex. B-5).  (*Id.* ¶ 11.)  Only in his January 10, 2008, library grievance did he mention Leflore's name, and that was to inform Holder that Leflore had previously permitted James access to the library.  (*Id.* ¶ 11(c).)  That library grievance vaguely described his fall that caused his jaw injury and described it as "an accident."  (*Id.*)

Finally, James's only mention of being placed in a different bunk was in the last couple lines of his Feb. 18, 2008, grievance requesting treatment for his jaw.  (*Id.* ¶ 11(d) and Ex. B-5.)  That grievance described a fall "about 10 days before Christmas of 2007 [when he] was walking up the steps in K-3 . . . and tripped on the steps and fell and cracked [his] jaw."  (*Id.* at Ex. B-5.)  That grievance in no way suggests any deliberate indifference on the part of Leflore or anyone else.  (*Id.*)

After asking to see a doctor for his jaw, James simply inquires: "Plus, I am wondering what type of compensation will I receive because of my accident. I have a lower-level-lower-bunk and why was I on the top floor? This is because of my leg surgery I had. Please respond in writing." (*Id.*)

Holder responded to each of James's grievances by answering his questions and declaring each grievance resolved. (Holder Aff. ¶¶ 11(a-d).) There is no record of James ever appealing any of the grievances. (*Id.* ¶ 12.)

### III. ARGUMENT

#### A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure allows a party to obtain summary judgment if he can demonstrate to the court that there is no genuine issue of material fact and that the moving party is entitled to judgment in his favor as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catratt,* 477 U.S. 312, 322 (1986). The substantive law underlying the claim defines which facts are material, and the Court should only refrain from granting the motion when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

The moving party has the initial burden of production to "demonstrate the absence of a genuine issue of material fact." *Celotex*, at 323. Once the moving party has met this burden, the party opposing summary judgment must establish the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 874 (1990). The non-moving party may not rely on the mere allegations of his pleadings to defeat summary judgment. Fed R. Civ. P.

56(e); *Celotex*, at 324.  Moreover, the non-moving party may not defeat summary judgment with an incantation that a supporting affidavit lacks credibility.  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988).  If the non-moving party fails to establish the existence of an essential element of the case on which he bears the burden of proof at trial, summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.

Applying that standard to this case, the LeFlore should be granted summary judgment.

**B.    JAMES DID NOT COMPLY WITH NEW CASTLE'S GRIEVANCE PROCEDURE**

The PLRA bars plaintiff from going forward with his claim against LeFlore without first exhausting his administrative remedies at New Castle Correctional Facility.  42 U.S.C. § 1997e(a); *see, also*, *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999).   Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  In *Booth v. C.O. Churner*, the United States Supreme Court held that § 1997e(a) applies even where the administrative remedy available did not match the offender's desired relief: "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  532 U.S. 731, 741 (2001).

In addition to outlining when the exhaustion of administrative remedies is required, the Supreme Court has set forth the extent to which offenders must

comply with prison facilities' administrative remedies: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  The Court also explained the benefit of the administrative process: "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance, . . . . [and t]he . . . system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.  With this benefit in mind, Congress sought to ensure compliance, and the Supreme Court emphasized this point:  "A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . [and W]e are confident that the PLRA did not create such a toothless scheme." *Id*.

James was an Arizona prisoner housed at the New Castle Correctional Facility and, therefore, was required to comply with the special grievance procedure in place for such inmates.  As James concedes in his "declaration" [DN 82], James was required to file a grievance with Barry Holder, using the Arizona letters made available to these inmates.  (Holder Aff. 8.)  Holder would respond to his grievance and, if he was not satisfied with Holder's response, James was required to appeal Holder's decision to Erica Wagner, Arizona's contract monitor.  (*Id.*)  New Castle Correctional Facility's records reveal that James did not exhaust his administrative

remedies regarding Leflore's alleged constitutional violations, and James's "declarations" filed with the Court have not pointed to any contrary evidence.

James never filed a single grievance claiming Leflore ever did anything wrong. (*Id.* ¶¶ 11(a-d).) The only grievance James filed that so much as mentioned Leflore listed him as a positive reference for Leflore. (*Id.* at Ex. B-4.) More notable about that grievance is James's description of his fall that is the subject of Leflore's allegedly unconstitutional behavior as "an accident." (*Id.*) The only grievance that James filed that complained of his fall made no mention of Leflore's involvement, and it was part of other complaints regarding the poor medical he was allegedly receiving. (*Id.* at Ex. B-5.) Grievance Manager Barry Holder responded to that grievance by informing James that he was in line to receive medical treatment and Holder considered that grievance closed. (*Id.* ¶ 11(d).) There is no record that James appealed this or any other grievance. (*Id.* ¶ 12.) None of James's "declarations" filed with the Court identifies any grievances or appeals that creates an issue of material fact on this defense. (*See* [DNs 51 and 82].) As a consequence, Thomas James failed to comply with New Castle's grievance policy and did not exhaust his administrative remedies as required by the PLRA. (Holder Aff. ¶ 13.)

### C. JAMES'S CLAIM DOES NOT CONSTITUTE A § 1983 VIOLATION

Even if James had exhausted his administrative remedies, James's allegations against Leflore fail to state a § 1983 claim. James's Amended Complaint appears to allege that Leflore was deliberately indifferent to James's safety at New Castle. (*See* Amended Compl. at Claim II.) The Constitution requires prison officials to only "take reasonable measures to guarantee the safety

of inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010). Such a "deliberate indifference to safety" claim brought under the Eighth Amendment requires James to show that (a) he was incarcerated under conditions posing a "substantial risk of serious harm," and (b) Leflore acted with "deliberate indifference" to that risk. *Id.* at 756.

### 1. James was not incarcerated under a substantial risk of serious harm.

To satisfy the "substantial risk" prong, James must demonstrate that the risk is "so great that it is almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). The Seventh Circuit has also described an "objectively sufficiently serious risk" as "one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004).

Examples that the Seventh Circuit cited include exposure to raw sewage, inordinate levels of environmental tobacco smoke, amputation from operating obviously dangerous machinery, or potential attacks by other inmates. *Id.* Applying this standard, courts routinely refuse to classify minor and potential hazards as "substantial risks." For example, a hazardous softball field condition, lack of handrails in the shower, slippery floors, and shocks from exposed wires have all been rejected by courts as "substantial risks." *See Henderson v.* Brown, 2010 U.S. Dist. LEXIS 102236 at \*\*11-13 (N.D. Ill. Sept. 27, 2010) (citing *Christopher*, 384 F.3d at 882 (softball field); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)

(handrails); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (water); and *Morissette v. Peters*, 45 F.3d 1119, 1124 (7th Cir. 1995) (wires)).

Tripping on stairs and falling—which is the only so-called "substantial risk" that James seems to allege in his claim against Leflore—is hardly a risk that "society considers so grave" that it offends "contemporary standards of decency." one that is "almost certain to materialize if nothing is done." Tripping on stairs and falling presents the exact same risk that is posed by slipper floors and showers without handrails, both of which were held by courts to not constitute substantial risks. This is because a great many cautions can be taken to avoid tripping and falling on stairs. James admits as much by calling his fall an "accident." Any harm that James admits resulted from "an accident" cannot be called a substantial risk and satisfy the objective prong of a § 1983 claim.

### 2. Leflore was not deliberately indifferent to a substantial risk of serious harm.

To satisfy the "deliberate indifference" prong, James must show that James was subjectively aware of the substantial risk of serious harm. *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004). James cannot satisfy this prong by merely asserting that James "ought to have known" about the risk. *Id.* Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal quotations omitted)).

Leflore was unaware of any "substantial risk of serious harm" to James. Leflore was Unit Team Manager for a different unit than K-Unit, where James was housed. (Leflore Aff. ¶¶ 7 and 9.) Therefore, Leflore was not aware of any request for a first floor bunk related to James. (*Id.* ¶ 10.) Even if he was aware of such a medical recommendation, he was not in a position to implement the recommendation. (*Id.*) Finally, even if a medical recommendation was made for James to be moved to a bunk on the first floor, that recommendation did not obligate Leflore or even the K-Unit Unit Team Manager to immediately implement it. (*Id.* ¶ 6.) As a consequence, the indisputable facts show that Leflore had no subjective knowledge of James's bunk request and, even if he did, he could have never drawn the inference that the risk posed to James was substantial and it fell on Leflore to protect James from that risk.

## IV.  CONCLUSION

Thomas M. James did not exhaust his administrative remedies in conformity with the Prison Litigation Reform Act, and, in any event, the indisputable facts show that no Dan Leflore was not deliberately indifferent to any substantial risk of serious harm suffered by James. As a consequence, no genuine issue of material fact exists, and Dan Leflore should be granted judgment as a matter of law.

s/Bruce B. Paul
Bruce B. Paul
Supreme Court No. 25731-10
E-mail: bpaul@stites.com
STITES & HARBISON, PLLC
323 East Court Avenue
Jeffersonville, IN 47130
Telephone: (812) 282-7566
COUNSEL FOR DEFENDANT, MR. LEFLORE

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2012, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    James F. Bleeke
    jim@bleekedilloncrandall.com
    Jeb Adam Crandall
    jeb@bleekedilloncrandall.com
    BLEEKE DILLON CRANDALL, P.C.

I hereby certify that a copy of the foregoing was served by United States First Class Mail, postage prepaid, on this 1st day of March, 2012 upon:

    Thomas M. James, #98106
    Arizona State Prison-Douglas
    Mohaue North
    P. O. Box 5002
    Douglas, AZ 85608

                                          s/Bruce B. Paul
                                          Bruce B. Paul

75661:1:JEFFERSONVILLE