# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS M. JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:09-cv-1204-WTL-TAB |
| | ) |
| DR. ELI LORENZO, et al., | ) |
| | ) |
| Defendants. | ) |

## Entry Discussing Motion for Summary Judgment

Defendant Dan LeFlore seeks resolution through the entry of summary judgment of the claims alleged against him. For the reasons explained below, LeFlore's motion for summary judgment [83] is **granted.**

## Background

Thomas M. James was an Arizona inmate incarcerated at the New Castle Correctional Facility ("New Castle") on November 27, 2007, when he alleges he "suffered a serious accidental injury to left side of skull and jaw area, by falling down." (Amended Compl. at Claim II, p. 4.) James alleges that LeFlore "failed to perform a duty . . . to move plaintiff to lower-level-lower bunk . . . ." (Id. at Claim II, p. 4-F.) James alleges LeFlore was "deliberately indifferent" in his alleged failure to move James. (Id. at Claim II, p. 4-G.)

LeFlore seeks summary judgment on the basis that James failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). LeFlore also seeks summary judgment on the merits. He argues that he was not deliberately indifferent to any substantial risk of serious harm to James.[1] Regardless of the merit of James' claim against LeFlore, whether he failed to exhaust his administrative remedies must be resolved before the merits of the

---

[1] Leflore asserts (with supporting evidence) that he never had an opportunity or obligation to move James to a lower-level, lower bunk. Although Leflore was a Unit Team Manager at New Castle in November 2007, James was not one of the inmates for whom Leflore was responsible. James was housed in Unit K-3, which was a unit for which Unit Team Manager Dallis Sloss was responsible. Leflore was Unit Team Manager for Unit I and half of Unit J. Therefore, Leflore did not know about the bunk-relocation recommendation that James alleges was made. Further, while Sloss could have moved James to a lower-level, lower-bunk if one was open and available, such medical recommendations did not bind Unit Team Managers to do so.

plaintiff's claims. *Pavey v. Conley,* 528 F.3d 494, 498 (7th Cir. 2008); *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir. 1999) ("The statute [requiring administrative exhaustion] can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit.").

## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

The substantive law applicable to the motion for summary judgment is this: The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. ' 1997e(a). *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 212 (2007). The exhaustion requirement of the PLRA is one of "proper exhaustion" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006). This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 84; *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004).

## Material Facts

James has opposed the motion for summary judgment, but his response is inadequate to create a genuine issue of material fact. Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted

material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. See Local Rule 56-1(e). Although we construe pro se filings liberally, pro se litigants are not exempt from procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); s*ee also Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). The Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003).

James has opposed the motion for summary judgment, but he fails to support any material facts in dispute with citations in a way that specifies where the relevant information can be found in the supporting evidence. Local Rule 56-1(h) provides that the court has no duty to search or consider any part of the record not specifically supported by specific citations to admissible evidence. For example, James states that "the record reflects Indiana, N.C.C.F. Geo Group grievance is completed." In support James cites Exhibit E (dkts 90-5 and 90-6), which is 122 pages. James' failure to properly oppose the motion for summary judgment has a particular consequence, which is that he has admitted the truth of the defendant's statement of material facts for purposes of the court acting on the motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This is the result of Local Rule 56-1(f), of which James was notified. This does not alter the standard for assessing a Rule 56 motion, but does Areduc[e] the pool@ from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

The undisputed material facts are as follows: New Castle had a special grievance procedure in place for Arizona inmates, which allowed them to exhaust their administrative remedies. First, the inmate needed to submit the standard Arizona grievance form to Barry Holder, specifically stating the prison condition that was a problem. Holder would then answer each grievance and, if the inmate was not satisfied with Holder's response, the inmate would appeal his grievance to Erica Wagner, the Arizona contract monitor. James was aware of this procedure.

James filed grievances regarding (a) medical treatment for his toe (Oct. 25, 2007, grievance at Ex. B-2), (b) mail that he alleged was improperly opened (Nov. 28, 2007, grievance at Ex. B-3), (c) his access to the library to work on other legal matters (Jan. 10, 2008, grievance at Ex. B-4), and (d) medical treatment for his jaw (Feb. 18, 2008, grievance at Ex. B-5).

James's only mention of being placed in a different bunk was in the last few lines of his Feb. 18, 2008, grievance requesting treatment for his jaw. Ex. B-5. That grievance described a fall "about 10 days before Christmas of 2007 [when he] was walking up the steps in K-3 . . . and tripped on the steps and fell and cracked [his] jaw." *Id.* After asking to see a doctor for his jaw, James inquires: "Plus, I am wondering what type of compensation will I receive because of my accident. I have a lower-level-lower-bunk and why was I on the top floor? This is because of my leg surgery I had. Please respond in writing." *Id.*

Holder responded to each of James' grievances by answering his questions and declaring each grievance resolved. There is no record of James ever appealing any of the grievances.

## Discussion

The PLRA bars James from going forward with his claim against LeFlore without first exhausting his administrative remedies. *See, e.g., Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999). James was an Arizona prisoner housed at New Castle and therefore, was required to comply with the special grievance procedure in place for such inmates. James was required to file a grievance with Barry Holder, using the Arizona letters made available to these inmates. Holder would respond to the grievance and, if the inmate was not satisfied with Holder's response, James was required to appeal Holder's decision to Erica Wagner, Arizona's contract monitor.

New Castle's records reveal that James did not exhaust his administrative remedies regarding Leflore's alleged constitutional violations related to James' accidental fall and James' opposition to the motion for summary judgment has not pointed to any contrary evidence.

The only grievance that mentioned James' fall was seeking additional medical treatment for his jaw. See Feb. 18, 2008, grievance at Ex. B-5. Grievance Manager Barry Holder responded to that grievance by informing James that he was in line to receive medical treatment and Holder considered that grievance closed. There is no record that James appealed this or any other grievance.

Leflore argues that James did not file any grievance asserting that LeFlore violated James' constitutional rights. But, such level of specificity was not necessary in this case. The Supreme Court instructed in *Jones v. Bock*, 549 U.S. 199 (2007), that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." The Supreme Court opined that notice to an individual that he might be sued "has

not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* at 218-19 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). It is the grievance policy which controls the inquiry. The relevant grievance procedure in this action, see Exhibit B, dkt. 84-2, did not provide any instructions regarding the level of detail necessary to comply with the grievance process. Under these circumstances, James' failure to name LeFlore in the February 18, 2008, grievance—the only grievance that mentioned James' fall—is not dispositive.

Summary judgment is appropriate, however, because the evidence reflects that James failed to properly appeal the February 18, 2008, grievance. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that James' claims against LeFlore should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004)("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating").

## Conclusion

LeFlore's motion for summary judgment [83] is **granted**.

No partial final judgment shall issue at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**


Date: _____

Distribution:

Thomas M. James
DOC #98106
Arizona State Prison
ASPC-Douglas
Mohaue North
P.O. Box 5002
Douglas, AZ 85608

Electronically Registered Counsel